Gerald **BANKS** and Kelly Banks,
Plaintiffs–Appellants,

v.

**UNISYS CORPORATION** and
Burroughs Corporation,
Defendants–Appellees.

No. 00–1030.

United States Court of Appeals,
Federal Circuit.

Decided: Sept. 28, 2000

**1358**

Vincent A. Wellman, Blaske & Blaske, P.L.C., of Ann Arbor, Michigan, argued for plaintiffs-appellants. On the brief was Thomas H. Blaske, Blaske & Blaske, P.L.C. Of counsel was Carol A. Elliott, Seeligson, Jordan, DeLoof & Hopper, of Ann Arbor, Michigan.

Jeffrey A. Sadowski, Howard & Howard, of Bloomfield Hills, Michigan, argued for defendants-appellees.

Before MAYER, Chief Judge, FRIEDMAN, Senior Circuit Judge, and SCHALL, Circuit Judge.

MAYER, Chief Judge.

Gerald Banks appeals the judgment of the United States District Court for the Eastern District of Michigan, holding on summary judgment that there was an implied-in-fact contract to assign inventive rights from Banks to Unisys Corporation and Burroughs Corporation (together, "Unisys"). *See Banks v. Unisys Corp.,* No. 96–CV–70869 (E.D. Mich. June 3, 1999). Because the district court erred by concluding that Banks failed to raise a genuine issue as to any material fact, we vacate and remand.

*Background*

In late 1986, a headhunter recruited Banks, an expert in optical engineering, for employment with Burroughs Corporation, now wholly-owned by Unisys Corporation, its successor in interest. When Banks began employment in 1987, Unisys requested that he sign a standard form entitled "Agreement as to Patents, Inventions and Other Creative Property Rights and Regarding Competitive Activities," which was essentially an agreement to assign inventive rights to Unisys. Banks did not sign the agreement.

At Unisys, Banks began working with the Image Camera Project, which was engaged in the development of an image camera for use with a high-speed document sorter. On his own initiative and on his own time, he tested the camera to confirm some problems he had detected, and recommended a redesign of the camera's optics. As a result of Banks' efforts, the project developed an improved design that produced an acceptable image in the camera. In 1988, Unisys incorporated the optics developed by Banks into a high-speed document sorter.

In 1989, Unisys initiated six patent applications related to the sorter. Banks was listed as co-inventor on three of them without his consent or knowledge. Unisys asked him to sign the patent forms and represented that he would be paid for each one. However, Unisys did not explain the importance of the patents. Banks signed three separate declarations and patent assignments, but Unisys later told him he would be paid nothing.

Banks filed suit, claiming that Unisys made misrepresentations that induced him to assign his patent rights. Unisys moved for summary judgment, arguing that under the "employed to invent" rule, it owns all rights to the patents. Thus Banks' claims of fraud are meritless because he had no rights to assign. The district court examined evidence of Banks' relationship with Unisys at the time of the inventive work and determined that the employment relationship was indistinguishable from that in *Teets v. Chromalloy Gas Turbine Corp.,* 83 F.3d 403, 38 USPQ2d 1695 (Fed. Cir.1996).[1] *See Banks,* slip op. at 8. The

1. Before examining the employment relationship, the district court discussed the Michigan Supreme Court's application of the "employed to invent" rule in *Gear Grinding Mach.* *Co. v. Stuber,* 282 Mich. 455, 276 N.W. 514 (1937), and determined that "Michigan law is identical to that stated by the Federal Circuit in *Teets." Banks,* slip op. at 7.

district court granted Unisys' motion, concluding that Banks had not raised a genuine issue of material fact about whether there was an implied-in-fact contract to assign his inventive rights to Unisys. This appeal followed.

## Discussion

■ The well-pleaded complaint in this case alleged *inter alia* that Unisys failed to name Banks as a co-inventor on a number of other patents and requested that the district court correct them under 35 U.S.C. §§ 116 and 256. Therefore, we have jurisdiction because the district court's jurisdiction was based, in part, on 28 U.S.C. § 1338. *See* 28 U.S.C. § 1295(a)(1) (1994); *MCV, Inc. v. King-Seeley Thermos Co.*, 870 F.2d 1568, 1570, 10 USPQ2d 1287, 1289 (Fed.Cir.1989). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). In reviewing the district court's summary judgment, we view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ The general rule is that an individual owns the patent rights to the subject matter of which he is an inventor, even though he conceived it or reduced it to practice in the course of his employment. There are two exceptions to this rule: first, an employer owns an employee's invention if the employee is a party to an express contract to that effect; second, where an employee is hired to invent something or solve a particular problem, the property of the invention related to this effort may belong to the employer. Both exceptions are firmly grounded in the principles of contract law that allow parties to freely structure their transactions and obtain the benefit of any bargains reached. *See Teets*, 83 F.3d at 407, 38 USPQ2d at

1697; *Melin v. United States*, 201 Ct.Cl. 748, 478 F.2d 1210, 1213 (1973).

■ "An implied-in-fact contract is an agreement 'founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.'" *Id.* at 407, 38 USPQ2d at 1698 (quoting *Baltimore & Ohio R.R. v. United States*, 261 U.S. 592, 597, 58 Ct.Cl. 709, 43 S.Ct. 425, 67 L.Ed. 816 (1923)). When applying the "employed to invent" exception, "a court must examine the employment relationship at the time of the inventive work to determine if the parties entered an implied-in-fact contract to assign patent rights." *Id.* "[S]tate contract principles provide the rules for identifying and enforcing implied-in-fact contracts." *Id.* (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).

■ Unisys argues that under the "employed to invent" rule, the law requires no express agreement of assignment, and that an employee's refusal to assign his inventive rights to his employer has no legal significance. Because Banks was assigned to work on a special project with the sole purpose of developing a workable image camera system, including his specific assignment to create and develop design suggestions for the system, Unisys argues further that he cannot now claim a right to the invention when he has already been compensated for his work. Banks argues that his refusal to assign his patent rights precludes the conclusion that there was an implied-in-fact contract to transfer inventive rights between him and Unisys.

When it examined the employment relationship at the time of the inventive work, the district court noted the fact that Banks did not sign Unisys' standard form for the assignment of inventive rights, *see Banks*, slip op. at 2, but, in its analysis, the court failed to address the impact of Banks' failure to sign this agreement, as

well as his failure to sign other agreements. *See id.* at 8–10. There is evidence in the record that Unisys never revisited the issue of invention ownership during the remainder of Banks' employment. On the last day of his employment, Banks also refused to sign a "Restricted Information Obligation" form that he believed would have assigned to Unisys all rights in his ideas or inventions conceived during his employment. This evidence, at least when viewed in the light most favorable to Banks, creates a genuine issue of material fact about whether there was a meeting of the minds necessary for an implied-in-fact contract. Although Unisys points to evidence that suggests that Banks was hired to invent an image camera system, a reasonable inference from Banks' failure to sign the agreements presented to him by Unisys, as well as from the failure of Unisys to pursue the signing of these agreements, is that Unisys acquiesced to Banks' refusal to convey ownership of his inventions, and thus an implied-in-fact-contract to assign inventive rights was not formed. Summary judgment was inappropriate.

### Conclusion

Accordingly, the judgment of the United States District Court for the Eastern District of Michigan is vacated, and the case is remanded for further proceedings consistent with this opinion.

### COSTS

Appellants shall have their costs.

*VACATED AND REMANDED*