**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DAVID PESNELL,
        *Plaintiff-Appellant,*

v.

JEFFREY ARSENAULT, a natural
person acting under color of
federal law; JANET R. LINTZ, a
natural person acting under color
of federal law; THOMAS P.
GALLAGHER, a natural person
acting under the color of federal
law; DOUGLAS J. MORGAN, a
natural person acting under color
of federal law,
        *Defendants-Appellees.*

No. 04-56721

D.C. No.
CV-03-07533-ABC

OPINION

Appeal from the United States District Court
for the Central District of California
Audrey B. Collins, District Judge, Presiding

Submitted October 16, 2006*
Pasadena, California

Filed June 21, 2007

Before: Procter Hug, Jr., Harry Pregerson, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Hug;
Partial Concurrence and Partial Dissent by Judge Clifton

*The panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

**COUNSEL**

Ronald J. Tocchini and Jason M. Sherman, Tocchini & Associates PC, Roseville, California, for the appellant.

Robert I. Lester and Sharla Cerra, Assistant United States Attorneys, Los Angeles, California, for the appellees.

**OPINION**

HUG, Circuit Judge:

This case involves the issue of when an action brought under the Federal Tort Claims Act ("FTCA") bars a later proceeding against the federal employees whose acts or omissions gave rise to the FTCA claims. We hold that the FTCA claims were dismissed for lack of jurisdiction and that the subsequent claims against the federal employees are not barred. We reverse the district court's dismissal of the subsequent action on the ground of procedural bar and remand for consideration of the remaining issues in the case. This case also involves a request for recusal of the district judge; we affirm the denial of that request.

**I.**

**Background**

Pesnell long contended that he owned two million acres of land in California. His claim to title depended upon records

dating back to the Mexican-American War. In 1998, the United States brought a quiet title action against Pesnell and others. In 1999, the district court entered judgment for the United States. That ruling extinguished Pesnell's claims to title of the real property. *United States v. Sierra Alpine*, CV 98-585-ABC (C.D. Cal. 1999).

In 2000, Pesnell brought an action against the United States and several federal agencies in the federal district court in Arizona. *Pesnell v. United States*, CV 00-0399-JCC (D. Ariz. 2000) ("*Pesnell I*"). In that action, Pesnell brought claims pursuant to the FTCA, 28 U.S.C. § 1346(b)(1).[1] Pesnell based his basic contention on two incidents. The first incident involved research allegedly costing $150,000. He did considerable research to establish his claim to title to the two million acres. Pesnell loaned this research to federal agents in 1988. The agents promised to return the research, but never did. Pesnell, therefore, had to reconstruct the research. The second incident involved his reconstructed research, allegedly costing $200,000. Federal agents took this research in 1995. The federal district court dismissed all the claims, and this court affirmed in April 2003. *Pesnell v. United States*, 64 Fed. App'x 73 (9th Cir. 2003).

Pesnell filed the current federal action in September 2003 in the Central District of California against four government employees. Pesnell's first amended complaint alleges four causes of action. The first is a federal civil Racketeer Influenced and Corrupt Organizations Act ("RICO") claim, in violation of 18 U.S.C. § 1962(c); the second is a state civil RICO claim in violation of Arizona Revised Statute section 13-2314.04(A); the third is a *Bivens*[2] constitutional claim for the

---

[1]That case also involved a claim under the Freedom of Information Act. The district court dismissed that claim as moot, and it is not involved in this appeal.

[2]*See Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

violation of Pesnell's Fourth Amendment right by the defendants based on an unlawful search and seizure of Pesnell's person and property; the fourth is a *Bivens* claim under the Fifth Amendment for the defendants having taken and kept his property without due process of law.

The district court granted the government's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) based on the FTCA's judgment bar rule set forth in 28 U.S.C. § 2676. Pesnell appeals, contending that *Pesnell I* was dismissed for lack of jurisdiction, and thus it was not a judgment on the merits, as is required by the judgment bar rule.

## II.

### Judgment Bar Rule

**[1]** The judgment bar rule of the FTCA provides: "The judgment in an action under section 1346(b) of this title shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." 28 U.S.C. § 2676. Pesnell does not contest that his *Bivens* claims arise out of the same subject matter as his FTCA claims.

**[2]** The parties agree that for the judgment bar rule to apply the judgment must be on the merits, not based on lack of jurisdiction. The parties are correct. Where a court dismisses an action because it does not meet the requirements of the waiver of sovereign immunity under the FTCA, the court is ruling that the action was not properly brought under the FTCA. Thus, the only action the court can take is to dismiss the complaint. The action was not properly brought in the first place and therefore the court had no ability to render a judgment on the merits. A lack of subject matter jurisdiction "goes to the very power of a court to hear a controversy; . . . [the] earlier case can be accorded no weight either as precedent or as law of the case." *Orff v. United States*, 358 F.3d 1137,

1149-50 (9th Cir. 2004) (quoting *United States v. Troup*, 821 F.2d 194, 197 (3d Cir. 1987)). Thus, the dismissal of the earlier case does not result in a "judgment" within the meaning of the judgment bar rule of § 2676. The court in the earlier case merely ruled that the action was not properly brought under the FTCA.

## III.

### Subject Matter Jurisdiction of *Pesnell I*

We review de novo the existence of subject matter jurisdiction. *Coyle v. P.T. Garuda Indonesia*, 363 F.3d 979, 984 n.7 (9th Cir. 2004). In this appeal, we are required to determine whether our affirmance of the dismissal of the claims in *Pesnell I* was on the merits or for lack of jurisdiction. Pesnell brought five FTCA counts alleging unjust enrichment, constructive trust, conversation, negligence, and misrepresentation against the Government. He also brought claims for wrongful search and seizure and violation of due process under the Fourth, Fifth, and Fourteenth Amendments.

[3] Specifically, we held Pesnell's claims of unjust enrichment and constructive trust were "appropriately dismissed for *lack of jurisdiction*." *Pesnell*, 64 Fed. App'x at 74 (emphasis added). We also held that, because Pesnell failed to exhaust his administrative remedies with respect to his conversion and negligence claims, "[t]he district court therefore *lacked jurisdiction* to consider [his] prematurely filed claims." *Id.* (emphasis added). We also upheld the dismissal of Pesnell's misrepresentation claim as proper, noting that the FTCA "specifically exempts claims for misrepresentation from its waiver of sovereign immunity," and therefore the dismissal was also based on lack of subject matter jurisdiction. *Id.* Additionally, we held that the FTCA does not include a waiver of sovereign immunity for constitutional tort claims. *Id.* Therefore, those claims were also dismissed for lack of jurisdiction. Thus, in

*Pesnell I*, we affirmed the dismissal of all of Pesnell's FTCA claims on grounds of lack of subject matter jurisdiction.

**[4]** Because we conclude that the judgment in *Pesnell I* was based on lack of jurisdiction, the FTCA's judgment bar rule does not preclude Pesnell from bringing his current *Bivens* and RICO claims arising out of the same subject matter. Similarly, this action is not barred by res judicata or collateral estoppel because each of these doctrines requires a final judgment on the merits. *See Providence Health Plan v. McDowell*, 385 F.3d 1168, 1174 (9th Cir. 2004); *Kourtis v. Cameron*, 419 F.3d 989, 994 (9th Cir. 2005).

## A.

### Response to the Dissent's Argument on Jurisdiction

The dissent contends that our ruling is in conflict with *Gasho v. United States*, 39 F.3d 1420 (9th Cir. 1994), in which we held that a prior judgment in an FTCA action did constitute a judgment bar under § 2676. *Id.* at 1437-38. The *Gasho* case is a complex one, in that it involved the appeals of two separate cases arising out of the seizure of an airplane and the arrest of its occupants. *Id.* at 1425. The first appeal in *Gasho* concerned whether the district court had erred in granting a summary judgment for the Government on claims arising from the arrest and seizure of the airplane. *Id.* at 1427. We reversed the district court's summary judgment in favor of the Government for the claims arising from the arrest for lack of probable cause. *Id.* at 1432. We affirmed the summary judgment for the Government on the claims arising from the seizure of the aircraft. *Id.* at 1439.

In the second *Gasho* appeal, which involved a *Bivens* action, we held that a judgment for or against the Government in the first *Gasho* case precluded a later *Bivens* action. *Id.* at 1437. Because we reversed the judgment on the claims arising out of the arrest in the first appeal, there was no judgment to

preclude a *Bivens* action in the second appeal. *Id*. at 1438. We held however, that the judgment for the Government arising from the aircraft seizure precluded a later *Bivens* action. *Id*.

A claim for the wrongful seizure of an aircraft is actionable under 28 U.S.C. § 1346(b)(1), unless the claim is excepted under 28 U.S.C. § 2680. This, however, requires a substantive factual determination, on the merits, of the nature of the tort; that is whether the alleged tortious act of the agent falls within the scope of activities exempted in § 2680. The opinion in *Gasho* interpreted § 2680

> as requiring the United States to first demonstrate that the Customs or IRS agent's tortious conduct falls within the scope of activities exempted in § 2680(c). If such a showing is made, the claim is barred. If the government fails to show that the tortious conduct is exempt, the plaintiff's claim is not barred, assuming the plaintiff demonstrates that an 'investigative or law enforcement officer' committed the intentional tort.

*Id.* at 1433. The *Gasho* court then held that "the Government clearly met its burden" and that "[t]he actions of the Customs agents, the seizure and detention of the aircraft, are precisely the kinds of acts that Congress exempted from liability in § 2680(c)." *Id*. The court affirmed summary judgment for the Government. *Id*.

In *Gasho*, the court had to make a factual determination on the nature of the tort of unlawful seizure involved. That was a merits determination of the nature of the tort necessary before there could be an exclusion of the claim for lack of jurisdiction.

The dissent refers to the dismissal of the misrepresentation claim in *Pesnell I* as being the same as the judgment in *Gasho*'s seizure claim. The significant difference is that in

*Pesnell I,* there was no jurisdiction to consider any "misrepresentation claim" whereas a "seizure claim" is not barred until a factual determination on the merits is made as to the nature of the claim.

All of the claims in *Pesnell I* were dismissed either expressly for lack of jurisdiction or because constitutional torts or claims for misrepresentation are not included in the waiver of sovereign immunity. There was no merits determination on the nature of the tort in *Pesnell I*, as was true for the seizure claim in *Gasho*.

## IV.

### Timeliness of the *Bivens* Claims

**[5]** Because the California district court dismissed Pesnell's claims on the basis of the judgment bar, it did not determine when the statute of limitations period accrued nor did it determine the applicability of equitable tolling or equitable estoppel. Either of those doctrines may extend the time for filing under the statute of limitations and involve determination of factual matters. For this reason, such determination is not ordinarily amenable to resolution under Rule 12(b)(6). "In fact, a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995). Therefore, this case must be remanded for a determination of timeliness.

We conclude that *Pesnell I* did not resolve the issue of timeliness. After concluding that all of the FTCA claims were dismissed for lack of jurisdiction the opinion in *Pesnell I* stated:

> While Pesnell could be permitted to amend his complaint to bring his constitutional claims against indi-

vidual government agents pursuant to *Bivens v. Six Unknown Named Agents*, . . . any such claims would be barred by the two-year statute of limitations applicable to *Bivens* actions in Arizona.

64 Fed. App'x at 75 (citations omitted).

The most significant aspect of this statement is that it pertains to *Bivens* claims that would be barred by the statute of limitations "in Arizona." The only pertinence it could have to California is if it could be accorded some res judicata or collateral estoppel effect. This *Bivens* action is brought in the State of California. "Although federal law determines when a *Bivens* claim accrues, the law of the forum state determines the statute of limitations for such a claim. In California, the statute of limitations could be either one or two years.[3] Tolling provisions for *Bivens* claims are also borrowed from the forum state." *Papa v. United States*, 281 F.3d 1004, 1009 (9th Cir. 2002). The issue for the California District Court on remand is whether an Arizona decision not to permit a plaintiff to amend his complaint to add a *Bivens* action against persons who were not parties to the FTCA action, and thus not parties before the court, is to be accorded res judicata status so as to foreclose the statute of limitations determination in the California District Court. The issue of extending the Arizona statute of limitations by equitable tolling or equitable

---

[3] On January 1, 2003, California's statute of limitations applicable to § 1983 actions changed from one-year to two-years. Cal. Civ. Proc. Code § 335.1. The statute is not retroactive. *See Maldonado v. Harris*, 370 F.3d 945, 954-55 (9th Cir.2004) (holding that under California law, the extension of the personal injury statute of limitations will not apply to claims already time-barred). *But see* Cal. Civ. Proc. Code § 335.1, statutory notes (c) & (d) (indicating that claims not already barred on September 10, 2002 would benefit from the extended statute of limitations). Which statute of limitations applies in Pesnell's case is left for the district court to determine on remand, as is the question of whether the statute of limitations for Pesnell's claim is extended by the application of equitable tolling or equitable estoppel.

estoppel was not discussed or ruled on in the *Pesnell I* decision. The application of res judicata or collateral estoppel doctrines is further attenuated by the fact that Pesnell seeks to have the doctrines of equitable tolling and equitable estoppel applied in relation to the California statute of limitations.

**[6]** Furthermore, the district court did not address the adequacy of the pleading for the federal and state RICO claims or the opportunity for the plaintiff to amend to resolve any deficiencies. The remand is also for the purpose of addressing the RICO claims.

## V.

### Motion for Recusal

In this case, Pesnell filed a Motion for Recusal alleging that Judge Collins displayed partiality because: (1) she would be a key witness regarding misrepresentations allegedly made by Assistant U.S. Attorney Donna Ford during the *Sierra Alpine* case; (2) Judge Collins's clerk, acting at Judge Collins's direction, instructed Pesnell to leave the courtroom "without apparent cause"; (3) Judge Collins issued Pesnell an order to show cause as to why his actions should not be dismissed for lack of prosecution; and (4) Judge Collins allegedly knew facts of *Sierra Alpine* from *United States v. Emerald Financial*, a case she presided over earlier.

**[7]** The denial of a recusal motion is reviewed for abuse of discretion. *Jorgensen v. Cassiday*, 320 F.3d 906, 911 (9th Cir. 2003). Under 28 U.S.C. § 144, if "the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, . . . [he] shall proceed no further . . . ." Under 28 U.S.C. § 455(a), "Any . . . judge . . . shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Under both recusal statutes, the substantive standard is " '[W]hether a reasonable person with knowledge of all the facts would con-

clude that the judge's impartiality might reasonably be questioned.' " *United States v. Hernandez*, 109 F.3d 1450, 1453 (9th Cir. 1997) (quoting *United States v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986)).

[8] In *Liteky v. United States*, 510 U.S. 540 (1994), the Supreme Court held that the alleged bias must usually stem from an extrajudicial source. *Id*. at 554-56. The Court held that:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves . . . they cannot possibly show reliance upon an extrajudicial source . . . . Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Id*. at 555 (internal citations omitted). However, "expressions of impatience, dissatisfaction, annoyance, and even anger" are not grounds for establishing bias or impartiality, nor are a judge's efforts at courtroom administration. *Id*. at 555-56.

[9] Judge Snyder, who presided over the recusal hearing, denied Pesnell's motion for recusal finding that "plaintiff does not argue that the presiding judge should be disqualified based upon any bias developed outside a judicial proceeding"

and thus did not meet the *Liteky* standard. Additionally, Judge Snyder found that Pesnell failed to "demonstrate any such 'deep-seated favoritism that would make fair judgment impossible.' " Moreover, Judge Snyder found the contention that Judge Collins is "likely to be a material witness in the proceeding" under 28 U.S.C. § 455(b)(5)(iv) to be without merit because there is no showing that she would be required to be a witness as to any material fact in the action. The district court did not abuse its discretion in denying the recusal motion. Each party shall bear its own costs on appeal.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED**.

CLIFTON, Circuit Judge, concurring in part and dissenting in part:

"Jurisdiction," the Supreme Court has observed, "is a word of many, too many, meanings." *Arbaugh v. Y & H Corp.*, 126 S. Ct. 1235, 1242 (2006) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998)). The majority opinion concludes that a dismissal based on lack of "jurisdiction" does not trigger the Federal Tort Claims Act (FTCA) judgment bar under 28 U.S.C. § 2676. The simplicity of that approach is appealing, but I disagree with the logic behind it and conclude that it paints with too broad a brush. Perhaps more importantly, I believe that both in adopting that approach and in reaching its conclusion regarding the judgment bar, the majority opinion is inconsistent with our court's precedent in *Gasho v. United States*, 39 F.3d 1420 (9th Cir. 1994). Thus, I respectfully dissent, in part.

I.

I agree completely with the majority opinion in affirming the denial of Pesnell's motion for recusal. I also agree with

the conclusions reached by the majority opinion that (1) Pesnell's current claims other than for misrepresentation are not barred by the previous litigation, and (2) we should not conclude, as defendants have argued, that the *Bivens* claims alleged by Pesnell against the individual federal agents are barred by the statute of limitations. Regarding the former, my reasoning diverges from that of the majority opinion and is explained in section IV below.

As for the limitations defense, it could be said that our court reached such a conclusion in *Pesnell v. United States*, 64 F. App'x 73, 75 (9th Cir. 2003) (*Pesnell I*), but that was applying Arizona's statute of limitations. The current case has been filed in California, and as the majority opinion notes, *ante* at 7459, for a *Bivens* claim we look to the law of the forum state to determine the duration of the limitations period and the provisions for tolling. *Papa v. United States*, 281 F.3d 1004, 1009 (9th Cir. 2002). That the limitations period had expired under Arizona law does not prevent Pesnell from trying to bring his claim under California law. *Zhang v. Dep't of Labor & Immigration*, 331 F.3d 1117, 1118 (9th Cir. 2003) ("A dismissal on statute of limitations grounds generally does not bar a subsequent action in a different forum when the limitations period in the second forum is longer than the first, and has not yet expired."). To be sure, it seems unlikely to me that the result under California law will be any different than under Arizona law,[1] but the district court in the current action did not make that determination, and I agree that the facts are not sufficiently developed and clear for us to do so on appeal.

## II.

The majority opinion holds that the judgment bar in 28

---

[1]The statutory period in California is no longer than the two-year period applied in *Pesnell I* from Arizona law, and California has a borrowing statute for statute of limitations purposes that could cause even a court in California to look to Arizona law. *See* Cal. Civ. Proc. § 361 (West 2006).

U.S.C. § 2676 applies only when the previous judgment was entered on the merits, not based on lack of jurisdiction. Since the earlier litigation brought by the same plaintiff on these same facts in the District of Arizona, cumulating in *Pesnell I*, ultimately resulted in dismissal of that lawsuit based on lack of jurisdiction, the majority concludes that the *Pesnell I* dismissal does not bar the current action.

In particular, the majority opinion reasons that an action dismissed because the court has concluded that sovereign immunity was not waived was "not properly brought in the first place and therefore the court had no ability to render a judgment on the merits." *Ante*, at 7454. It then continues:

> A lack of subject matter jurisdiction "goes to the very power of a court to hear a controversy; . . . [the] earlier case can be accorded no weight either as precedent or as law of the case." *Orff v. United States*, 358 F.3d 1137, 1149-50 (9th Cir. 2004) (quoting *United States v. Troup*, 821 F.2d 194, 197 (3d Cir. 1987)). Thus, the dismissal of the earlier case does not result in a "judgment" within the meaning of the judgment bar rule of § 2676. The court in the earlier case merely ruled that the action was not properly brought under the FTCA.

*Id*. (alterations as presented in majority opinion).

The majority opinion appears premised on the proposition that a case dismissed for lack of subject matter jurisdiction, like *Pesnell I*, is a nullity that "can be accorded no weight" and that does not result in a "judgment" within the meaning of the judgment bar rule. *Ante*, at 7454-55. That reasoning rests on a significant misunderstanding of *Orff v. United States*, 358 F.3d 1137, 1149-50 (9th Cir. 2004), *aff'd on other grounds*, 545 U.S. 596 (2005) — the precedent relied upon by the majority and an opinion which I authored — and of the significance of dismissals for lack of jurisdiction.

On appeal in *Orff* was a decision by the district court that it lacked jurisdiction to entertain a lawsuit brought against the federal government because the action was barred by sovereign immunity. *See* 358 F.3d at 1141-42. We affirmed that decision. *Id.* at 1149. So did the Supreme Court. 545 U.S. 596 (2005). Before reaching that conclusion, though, the district court had initially concluded that there was jurisdiction over the action, because it believed that sovereign immunity had been waived. *See* 358 F.3d at 1142. Before changing its mind on the sovereign immunity issue,[2] the district court made several decisions on the merits in the course of ruling on motions for summary judgment. *See id.* Some parties to the case, notably environmental groups which had intervened generally on the side of the federal government and in opposition to plaintiffs, wanted to preserve those rulings on the merits. *See id.* at 1150. We concluded that those rulings had to be vacated, however, in a section of our opinion titled "The District Court's Rulings on the Merits Must Be Vacated." *Id.* at 1149-50.

That's where the quotation from *Orff* relied upon by the majority opinion in this case appeared. The substance of what we said in *Orff* was not that a decision resulting in dismissal for lack of jurisdiction should be accorded no weight. Rather, it was that decisions (a) by the district court and (b) on the merits (meaning subjects other than jurisdiction and sovereign immunity — subjects that should never have been reached by the district court because the court lacked proper jurisdiction over the case to reach those other issues) could not be given weight and had to be vacated.

We were not referring to our own decision. That's why the language quoted from *Troup* said that the "*earlier* case can be

---

[2]The district court changed its conclusion with regard to sovereign immunity and jurisdiction based on another decision our court issued in the meantime, *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206 (9th Cir. 1999). *See Orff*, 358 F.3d at 1142.

accorded no weight." *Id.* (emphasis added). The "earlier" case was a reference to the decisions made by the district court, not our own court's opinion.

And, more than once, we specifically identified the portions of the district court's ruling that were affected by our decision: "Because the government never waived its immunity from suit, the district court never had jurisdiction to issue its rulings on the merits of the farmers' appropriative water rights, trust, and surcharge claims." *Id.* at 1149. "The district court's rulings on the merits of the appropriative water rights, trust, and surcharge claims shall not be binding in this or any other case." *Id.* "Because the district court lacked jurisdiction to entertain those claims, we vacate the rulings previously made by the district court on the merits of those claims." *Id.* at 1150.

As *Orff* explicitly articulated, the only decisions that were vacated — and the only portions that could not properly be recognized as either precedent or law of the case — were the "rulings on the merits of the farmers' appropriative water rights, trust, and surcharge claims" previously (or "earlier") made by the district court. Notably missing from that list was the ruling that sovereign immunity had not been waived and thus that the court lacked jurisdiction over the claims. The decision to that effect entered by the district court was not vacated. Our opinion did not say that the jurisdictional ruling by the district court was not binding. Nor did our decision in *Orff* in any fashion hold or suggest that our own court's ruling was not binding, even though the conclusion we reached was that sovereign immunity had not been waived and thus that jurisdiction was lacking.

The ruling as to sovereign immunity and jurisdiction was properly made, in turn, by the district court, by our court, and by the Supreme Court, under the fundamental proposition that a federal court always has jurisdiction to determine whether it has jurisdiction. *Stoll v. Gottlieb*, 305 U.S. 165, 171-72

(1938) ("There must be admitted, however, a power to interpret the language of the jurisdictional instrument and its application to an issue before the court. . . . [Absent fraud,] [a]fter a Federal court has decided the question of the jurisdiction over the parties as a contested issue, the court in which the plea of *res judicata* is made has not the power to inquire again into that jurisdictional fact." (footnotes omitted)); *see Special Investments, Inc. v. Aero Air, Inc.*, 360 F.3d 989, 992 (9th Cir. 2004) ("We, of course, have jurisdiction to determine our own jurisdiction." (citing *United States v. Ruiz*, 536 U.S. 622, 628 (2002))); *Breed v. Hughes Aircraft Co.*, 253 F.3d 1173, 1177 (9th Cir. 2001). There is, therefore, no reason to disregard that ruling or to treat it as a nullity. It was properly made by a court with authority to make it.

The *Orff* decision itself demonstrates this important distinction. The majority opinion cites *Orff* in support of the proposition that a decision that the court lacks jurisdiction means that the lawsuit was a nullity that should not be recognized. Yet *Orff* itself was a decision which reached the conclusion that the court lacked jurisdiction. The fact that the court lacked jurisdiction to proceed with the case did not mean that the court could not consider the case to determine whether it had jurisdiction. Obviously, it could. And, the fact that the court in *Orff* reached the conclusion that sovereign immunity had not been waived and thus that the court lacked jurisdiction to entertain the action did not mean that every decision the court made up to that point — the analysis and findings that led to the conclusion that jurisdiction was lacking — was a nullity that should not be recognized thereafter as precedent or law of the case. If that were true, then the majority opinion could not properly cite and rely on *Orff* itself as precedent, and neither could other panels of our court. But *Orff* can and has been cited as precedent, and not just by the majority opinion here. *See, e.g.*, *Allen v. Gold Country Casino*, 464 F.3d 1044, 1046 (9th Cir. 2006), *cert. denied*, 127 S. Ct. 1307 (2007). Similarly, the logic of the majority opinion would suggest that the Supreme Court's decision in *Orff v. United States*, 545

U.S. 596 (2005), was also a nullity and should not properly be recognized as precedent, either, since it also came to the conclusion that sovereign immunity had not been waived and thus that jurisdiction was lacking. But that's not so.

What each of the *Orff* courts decided with regard to issues properly before them does count, as precedent and, where appropriate, as law of the case. Other rulings made by the district court when it improperly thought that it had jurisdiction were vacated, but the decision that sovereign immunity had not been waived remained in place.

### III.

In *Gasho*, our court considered the appeals of two separate actions filed by the same plaintiffs. 39 F.3d at 1425. The first action was an FTCA action against the federal government for false arrest and false imprisonment, intentional infliction of emotional distress, and abuse of process. *Id.* at 1427. The district court granted the government summary judgment as to most of the claims and dismissed one for failure to state a claim. *Id.* The plaintiffs then filed a *Bivens* action against individual federal employees, specifically Customs agents, claiming violation of Fourth and Fifth Amendment rights. *Id.* at 1425, 1427. The district court dismissed the *Bivens* action based upon the first lawsuit and the § 2676 judgment bar. *Gasho*, 39 F.3d at 1427. Both dismissals were appealed, and our court considered the two appeals together. *Id.* at 1425.

*Gasho* was a complicated case. Our court affirmed the dismissals by the district court in part, but also reversed them in part, remanding some to the district court for further proceedings. *Id.* at 1439. The decision explained why different results were reached regarding the various claims alleged by the plaintiffs. What matters for purposes of our case is that *Gasho* affirmed the dismissal of some of the *Bivens* claims asserted against the Customs agents pursuant to the § 2676 judgment bar, based upon the prior dismissals of similar claims against

the government on precisely the same ground that *Pesnell I* dismissed some of Pesnell's claims against the federal government — that the court lacked jurisdiction over the particular claim because sovereign immunity had not been waived. In *Gasho* we applied § 2676 to bar the related claims against the individual federal agents, establishing a precedent which the majority opinion here disregards. It is the preclusive effect that our court in *Gasho* gave to two rulings in that case that require this conclusion.

The first ruling related to the district court's grant of summary judgment in favor of the government on the claim by the *Gasho* plaintiffs for intentional infliction of emotional distress. 39 F.3d at 1432. The *Gasho* court reviewed each factual basis for this claim separately. *Id.* at 1432-36. On the part of the claim arising from the seizure of the plaintiffs' aircraft, *Gasho* held that "[t]he actions of the Customs agents, the seizure and detention of the aircraft, are precisely the kinds of acts that Congress exempted from liability in § 2680(c)." *Id.* at 1433. The *Gasho* court then held that this determination precluded the effort of the plaintiffs to pursue a similar claim against the individual federal employees, because of the FTCA judgment bar. *Id.* at 1438.

The second ruling involved *Gasho*'s resolution of the plaintiffs' abuse of process claim. The district court had dismissed this claim under Fed. R. Civ. P. Rule 12(b)(6), ruling that the plaintiffs had failed to state a claim under Arizona tort law. *Gasho*, 39 F.3d at 1436. Instead of analyzing the relevant Arizona tort law, *Gasho* upheld the district court on the grounds that "[t]he tortious acts alleged by the Gashos involved detention of goods and merchandise by Customs and, therefore, the claim is barred under the FTCA's exemption for Customs detentions contained in 28 U.S.C. § 2680(c)." *Id. Gasho* also gave this ruling preclusive effect, explicitly stating that the court "reject[s] the appellants' argument that the dismissal of the abuse of process claim for failure to state a claim is not a 'judgment' on the merits under 28 U.S.C. § 2676. In any

case, the claim is barred by the Customs exception of 28 U.S.C. § 2680(c)." *Id.* at 1438 n.17 (citation omitted).

In both of these instances, the government prevailed because the court did not have subject matter jurisdiction absent a waiver of sovereign immunity. Yet even though these were "jurisdictional" victories, our court held in *Gasho* that they triggered the FTCA judgment bar, such that the plaintiffs' similar claims against the individual employees were precluded and had to be dismissed.

*Pesnell I*'s holding as to the misrepresentation claim is indistinguishable. *Pesnell I* rejected the misrepresentation claim brought by Pesnell against the government because 28 U.S.C. § 2680(h) specifically carves out misrepresentation from the FTCA's waiver of sovereign immunity. *See* 64 F. App'x at 74 (stating that "[t]he FTCA specifically exempts claims for misrepresentation from its waiver of sovereign immunity" and citing *FDIC v. Craft*, 157 F.3d 697, 707 (9th Cir. 1998)). Just as *Gasho* read § 2676 as barring any additional actions against individual federal agents arising from the seizure of the Gashos' plane, because § 2680(c)'s exemption for Customs detentions foreclosed any liability for this seizure, so too must *Pesnell I*'s ruling on § 2680(h) give rise to application of the judgment bar against any further litigation targeting the individual agents as defendants based on the agents' alleged misrepresentations.

The majority opinion attempts to distinguish *Gasho* this way: "In *Gasho*, the court had to make a factual determination on the nature of the tort of unlawful seizure involved. That was a merits determination of the nature of the tort necessary before there could be an exclusion of the claim for lack of jurisdiction." *Ante,* at 7457. With respect, I don't know what makes that a meaningful distinction. *Gasho*'s so-called "merits determination" was a ruling that the court had no jurisdiction because Congress had not waived sovereign immunity.

That was exactly the same ruling made to dismiss Pesnell's misrepresentation claim against the federal government.

*Gasho* was not a case where the plaintiff simply failed to succeed on the merits (for instance, by failing to prove an element of the alleged tort) of a claim for which there was a waiver of sovereign immunity and thus jurisdiction, as the court's handling of the abuse of process claim demonstrates. *See* 39 F.3d at 1436. Instead, *Gasho* was a case where the court could not entertain the claim at all, since sovereign immunity deprived it of jurisdiction. Why should the length of discussion or the amount of analysis required before the court concludes that there is no jurisdiction matter to whether the judgment bar applies? The majority opinion does not explain.[3] There is nothing in *Gasho* that invites such a distinction. If the proffered distinction is meant to serve § 2676's goal of conserving governmental resources, *see Gasho*, 39 F.3d at 1437, then the majority's line drawing is an arbitrary exercise completely unmoored from both the text of the statute — text which is actually the best reflection of Congress's policy election — and our case law.

*Gasho* cannot properly be read as standing for less than the proposition dictated by its facts: an adverse ruling resulting from an explicit exception to the FTCA's waiver of sovereign

[3]The majority suggests that there might be an inherent structural difference between § 2680(c) and § 2680(h), *ante*, at 7457-58, but no such categorical distinction exists. Some cases, even if ultimately dismissed under § 2680(h), still require a court to make a determination to reach such a dismissal. *See United States v. Fowler*, 913 F.2d 1382, 1387-88 (9th Cir. 1990) (dismissing a counterclaim that alleged negligence, which would ordinarily be cognizable under the FTCA, on the basis that it was really an attempt to recover for misrepresentation). The majority's distinction is not one dividing § 2680(c) from § 2680(h), but one that turns on how artfully, or ineptly, an action was plead. As explained in the text, there is no reason to condition § 2676's applicability on whether the plaintiff's first suit craftily pleaded an exempt claim under some other guise, or, as in *Pesnell I*, basically wrote one of the FTCA's exemptions directly into the complaint.

immunity is a judgment for purposes of § 2676, so that the statute bars similar litigation against the individual employees.

The government can rely on general preclusion principles (whether called issue or claim preclusion, collateral estoppel or res judicata) as much as any other litigant, so the statutory bar set forth in § 2676 presumably reaches further or adds something more. *See Will v. Hallock*, 126 S. Ct. 952, 960 (2006) (describing § 2676 as closer to res judicata than immunity and as functioning "in much the same way" as res judicata, but also observing that "the statutory judgment bar is arguably broader than traditional res judicata"). *Gasho* decided that certain dismissals for lack of "subject matter jurisdiction" based on sovereign immunity trigger the judgment bar under § 2676. The refusal of the majority opinion to follow that precedent is unjustified.

## IV.

I agree with the majority that the judgment bar does not completely prevent Pesnell from bringing his current RICO claims, but bars those claims only to the extent that they are predicated on certain other acts. In particular, *Gasho* does not require that the judgment bar be applied to *Pesnell I*'s dismissals of his conversion and negligence claims. These were also dismissed due to a lack of jurisdiction, but as I noted at the outset, "jurisdiction . . . is a word of many, too many, meanings." *Arbaugh*, 126 S. Ct. at 1242 (internal quotations marks omitted).

Not all dismissals for lack of jurisdiction should be treated alike. With regard to Pesnell's claims for conversion and negligence, the absence of jurisdiction stemmed from a failure to exhaust, a defect that could be cured. 64 F. App'x at 74. The failure to exhaust was not a permanent problem, such as the absence non-existence of a waiver of sovereign immunity. Instead it merely reflected a failure to conform to the condi-

tions placed on an existent waiver of sovereign immunity. Although these dismissals and the one relating to misrepresentation all fall under the broad heading of "dismissals for lack of jurisdiction," there is a difference between them that is material. When Congress explicitly carves out an exception to its waiver of sovereign immunity, it is flatly rejecting liability. When Congress waives sovereign immunity but imposes exhaustion requirements, it is accepting liability and channeling the claims in a specific way. It is logical to hold that rulings falling into the first category constitute judgments for § 2676, while rulings in the second category do not. That would permit the judgment bar to serve the two purposes our case law has enunciated, preventing dual recoveries and duplicate lawsuits, *Gasho*, 39 F.3d at 1437; *Kreines v. United States*, 959 F.2d 834, 838 (9th Cir. 1992). At the same time it would keep § 2676 from being unduly harsh to plaintiffs bringing claims for harms that Congress has agreed, in principle, are cognizable. That is, therefore, the distinction I would draw.

I would also exempt from the operation of § 2676 those claims denied in *Pesnell I* because the FTCA was silent on the claim and no other waiver of sovereign immunity was adduced, not because the FTCA contained a specific waiver exception. The judgment bar relates only to a "judgment in an action under section 1346(b) of this title," 28 U.S.C. § 2676, and these claims did not constitute actions under 28 U.S.C. § 1346(b). Indeed, the claims did not fall under any statute. *See Pesnell I*, 64 F. App'x at 74-75 (holding that Pesnell's equitable claims cannot fit under the Administrative Procedure Act's waiver and he had "not established an independent basis of federal jurisdiction," as well as noting that the FTCA did not contain a waiver for constitutional claims). That is why the claims to that effect filed against the government failed. But the text of § 2676 does not cover these other legal theories, outside § 1346(b), and thus I would not apply the judgment bar to the similar claims filed against the individual agents.

*Gasho* requires us to interpret § 2676 as barring those portions of Pesnell's RICO claims that are predicated on the same alleged misrepresentations which were the subject of *Pesnell I*. The district court's flat dismissal of the entirety of Pesnell's current lawsuit under the FTCA judgment bar was incorrect, however, since the bar does not extend any further than the misrepresentation claims.

V.

In the end, my disagreement with the majority opinion has only a limited effect on the outcome of this particular appeal. I believe that Pesnell's current claims based on misrepresentation are precluded by the § 2676 judgment bar. For various reasons his other claims survive, at least theoretically. But the gap in reasoning is wide and significant. By treating a decision to dismiss based on lack of jurisdiction as a nullity that may be disregarded because it is a decision that "can be accorded no weight either as precedent or as law of the case," *ante* at 7454, the majority opinion conflicts with our precedent in *Gasho* and improperly denigrates the precedential value of untold numbers of prior decisions based on similar grounds. I respectfully dissent.